UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| WESLEY WHITLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 3:24-cv-843-CLS |
| ) | |
| UNITED PARCEL SERVICE, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff, Wesley Whitlock, began employment with defendant, United Parcel Service, Inc. ("UPS"), in 2005. He then was classified as a "preloader" in the company's package operation. He later occupied the position of "customer counter clerk." Following a company-wide reorganization in January of 2023, however, he returned to UPS's package operation as a "loader/unloader." Plaintiff's complaint alleges that, after he filed a grievance against his manager, Chuck Sims, he was "harassed, bullied, and intimidated."[1] The complaint does not divulge the substance of plaintiff's grievance, but he asserts a claim of retaliation against UPS under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* This opinion addresses UPS's motion for summary judgment. Doc. no. 28.[2]

---

[1] Doc. no. 1 (Complaint) ¶ 12.

[2] As part of the motion for summary judgment, UPS asked the court for a conclusive finding that plaintiff did not have an objectively reasonable belief that UPS violated his rights under the

## I. FACTUAL BACKGROUND

As an initial matter, the court notes that plaintiff failed to comply with the requirements for briefs contained in section D of Exhibit II to the "ALND Uniform Initial Order Governing All Further Proceedings" entered as document number 8 in this case on July 26, 2024. The court's clear and explicit instructions in that Order required plaintiff to identify, in separately numbered paragraphs: any disputes with defendant's claimed undisputed facts; additional undisputed facts, if any; and, additional disputed facts, if any. Despite those instructions, the entirety of plaintiff's response to defendant's statement of facts reads as follows:

> Wesley Whitlock has been a union employee at UPS since 2005. He worked as a customer counter clerk for ten years before being displaced by another employee with more seniority due to the "Clerical Optimization Project."
>
> During his time at UPS, Mr. Whitlock engaged in protected activity including multiple grievances against his supervisor Chuck Sims. On December 4, 2023, he expressed grievances that included a dispute with Business Manager Chuck Sims over the handling of a package, the availability of supplies for customers at the counter — matters implicating wage compensation and customer service policies. On December 19, 2023, he filed a grievance over being denied an overtime opportunity under the [Collective Bargaining Agreement]'s seniority provisions, for which he was subsequently compensated.
>
> Mr. Whitlock testified during his deposition to additional actions by Mr. Sims, including the unexplained removal of the employee rights

---

FLSA as a sanction for plaintiff's failure to comply with the court's previous sanctions order. Doc. no. 28 (Defendant United Parcel Service Inc.'s Motion for Summary Judgment and Brief in Support), at 4-5. The court denied that request in the order entered on May 28, 2025. Doc. no. 35.

bulletin board from its customary location and the concealment of bid sheets that affect access to additional paid work opportunities (Whitlock Depo. P. 12, L28-30).[3]

Whitlock also testified that Sims routinely singled him out during meetings, and that these confrontations caused him significant distress and were perceived as retaliation for his complaints (Whitlock Depo. p.12, L30-31).

Doc. no. 36 (Plaintiff's Opposition to Summary Judgment), at 1-2 (some citations omitted) (alteration supplied).

Plaintiff's response does not controvert defendant's statement of undisputed facts in any meaningful respect. Accordingly, defendant's undisputed statement of material facts is deemed to be admitted by plaintiff for summary judgment purposes. *See* doc. no. 8 (ALND Uniform Initial Order Governing All Further Proceedings, entered July 26, 2024), App'x II, § D.2.a. ("*All material facts set forth in the statement required by the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*") (emphasis in original). Further, defendant's undisputed statement of material facts contained in section III of its brief in support of its motion for summary judgment is adopted in full.[4] Even so, the court has reviewed the entire record, and the following summary of the factual background is provided as context for discussion

---

[3] The citation referenced in text, as well as the following one, is incorrrect. The referenced deposition page contains only 25 lines. *See* doc. no. 28-2 (Plaintiff dep.), at 12.

[4] Doc. no. 28 (Defendant United Parcel Service Inc.'s Motion for Summary Judgment & Brief in Support), at 5-10.

of plaintiff's claims.

As stated previously, plaintiff began employment with UPS in 2005 in the capacity of a "preloader" in the Florence, Alabama UPS center.[5] He has been a member of the International Brotherhood of Teamsters, the labor union that represents defendant's hourly employees, throughout his employment at UPS.[6] A collective bargaining agreement ("CBA") between the Teamsters and UPS governs the terms and conditions of employment for bargaining unit employees.[7] The CBA guarantees part-time employees, such as plaintiff, three-and-one-half hours of work for each shift.[8]

Plaintiff became a "customer counter clerk" in 2013, and held that position until January of 2023. At that time, and as the result of a clerical reorganization program implemented by UPS, plaintiff returned to his previous position as a part-time package loader.[9]

Chuck Sims was the manager of the Florence Center from 2021 until his

---

[5] Doc. no. 28-2 (Plaintiff dep.), at 19.

[6] *Id.* at 20.

[7] Doc. no. 28-3 (Robinson decl.) ¶ 3.

[8] Doc. no. 28-3 (Teamsters Southern Region and United Parcel Service Supplemental Agreement to the National Master United Parcel Service Agreement), art. 49, at ECF 55.

[9] That program eliminated certain positions and allowed employees to bid on the remaining positions based upon their seniority, in accordance with the CBA between the union and UPS. An employee with higher seniority displaced Whitlock from the customer counter clerk position. *See* doc. no. 28-2 (Plaintiff dep.), at 25-26.

retirement during 2024.[10]  Other full-time and part-time supervisors, including part-time supervisor Khamari Brown, who was plaintiff's supervisor, reported to Sims.[11]

Plaintiff filed four grievances during his employment with UPS.  Each grievance was filed after January 2023: the month during which plaintiff returned to the loader/unloader position.  However, plaintiff's brief in response to defendant's motion for summary judgment addresses only the grievances that he filed on December 4 and December 19, 2023.[12]

Plaintiff's December 4, 2023 grievance grew from a warning notice that Chuck Sims issued to plaintiff on November 29, 2023.[13]  The notice admonished plaintiff for his "failure to treat [his] supervisor with dignity and respect," and informed him that further instances of similar conduct would result in disciplinary action.[14]  Plaintiff explained his December 4, 2023 grievance, and the circumstances that precipitated the warning notice, as follows:

> I was getting a box from the mechanic.  He always saves his boxes for me at [the] customer counter.  When Chuck [Sims] appeared he told me we don't box up [packages] here.  All I said to him was we can now

---

[10] Doc. no. 28-1(Sims decl.) ¶ 2.

[11] *Id.* ¶¶ 5-6.

[12] Plaintiff filed a grievance on April 26, 2023, complaining that local sort supervisor Khamari Brown "disrespected" him and "called [him] out in front of [his] coworkers." Doc. no. 28-3 (Apr. 26, 2023 Grievance), at ECF 119 (alterations supplied).  He also filed a grievance on June 7, 2023, again complaining about Brown's behavior toward him.  Doc. no. 28-3 (June 7, 2023), at ECF 121.  Neither of those complaints related to violations of FLSA.

[13] Doc. no. 28-3 ("Warning Notice Under Article 52 of Labor Agreement"), at ECF 127.

[14] *Id.*

> scan the Amazon Return codes then he said to send my customers to the UPS store. I never boxed up any amazon [packages]. I have used packs to put them in. I didn't disrespect him what so ever.

Doc. no. 28-3 (Dec. 4, 2023 Grievance), at ECF 121 (alterations supplied). He further stated:

> I am so tired of being singled out and definitely being retaliated against when I have done nothing wrong. I have been asking for a remedy sought for over 8 months now but still getting targeted. Protest of warning letter.

*Id*.

Sims, however, stated in his declaration that he issued the warning notice because he "heard [plaintiff] cursing at his supervisor, Khamari Brown, while working on the belt."[15] Even so, Sims related his version of the incident described in plaintiff's grievance as follows:

> On December 4, 2023, I observed [plaintiff, Wesley] Whitlock taking a box to the customer counter. Whitlock and others had a habit of bringing empty used boxes for customers to box up packages in, but on more than one occasion, they distributed boxes with the word "hazmat" on them — a potential problem for our customers because they could be perceived as transporting hazardous goods, which is a federal violation. I had told our clerks to stop giving empty boxes to customers after this. On this specific date, I also recall that the customer who came in had a code that would have given them a free box from the UPS store, so I told Whitlock to advise the customer to go to the UPS store instead. Whitlock became upset and filed a grievance against me for this.

Doc. no. 28-1 (Sims decl.), ¶ 14 (alteration supplied).

---

[15] Doc. no. 28-1 (Sims decl.), ¶ 13.

Plaintiff filed another grievance on December 19, 2023, in which he stated the following:

> I was never informed about working Saturday [December 16, 2023]. They told another clerk with less seniority [to] work over 8 hours. That was supposed to be my work.

Doc. no. 28-3 (Dec. 19, 2023 Grievance), at ECF 125 (alterations supplied). That grievance related to defendant's practice of adding shifts during the company's peak season. Supervisors may ask employees to perform "extra work" during those shifts in order to manage the increased volume of packages.[16] The CBA requires "extra work" to be assigned according to seniority,[17] but on December 16th, an employee named "Brandon" who had less seniority than plaintiff worked the extra shift.[18] Even so, plaintiff ultimately received 7.5 hours of pay, even though he did not actually work on that date.[19]

Apart from his contention that he should have been afforded the opportunity to work on Saturday, December 16th, plaintiff did not complain to UPS about his wages or hours.[20] Plaintiff confirmed that he was paid at least his regular pay rate, which exceeded the federal minimum wage of $7.25 per hour, for each hour of compensable

---

[16] *See id.* ¶ 15.

[17] Doc. no. 28-3 (Teamsters Southern Region and United Parcel Service Supplemental Agreement to the National Master United Parcel Service Agreement), art. 49, at ECF 55.

[18] Doc. no. 28-2 (Plaintiff dep.), at 38.

[19] *Id.* at 38, 60.

[20] *Id.* at 60.

work that he performed.[21] Plaintiff also admitted that he had never worked more than forty hours during a workweek; and, that, therefore, that he was not entitled to overtime pay under the FLSA during the time period relevant to this lawsuit.[22] Finally, plaintiff has never participated in an FLSA-related investigation.[23]

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving

---

[21] Doc. no. 28-2 (Plaintiff's Admissions), at Nos. 6 & 7. Plaintiff was paid an hourly rate of $23.02 during 2022, $24.84 during 2023, and $29.09 during 2024. Doc. no. 28-2 (Pay Stub Excerpts), at ECF 158-60.

[22] Doc. no. 28-2 (Plaintiff dep.) at 72.

[23] *Id.* at 119.

8

party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (alteration and emphasis supplied). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

### III. DISCUSSION

The Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.*, establishes

> minimum wage, overtime pay, recordkeeping, and youth employment standards affecting employees in the private sector and in Federal, State, and local governments. Covered nonexempt workers are entitled to a minimum wage of not less than $7.25 per hour effective July 24, 2009. Overtime pay at a rate not less than one and one-half times the regular rate of pay is required after 40 hours of work in a workweek.

U.S. DEPARTMENT OF LABOR, Wage and Hour Division, *Wages and the Fair Labor Standards Act*, https://www.dol.gov/agencies/whd/flsa (last visited Aug. 14, 2025); *see also* 29 U.S.C. § 206 (minimum wage); *id.* § 207 (overtime pay); *id.* § 211 (recordkeeping); *id.* § 212 (youth employment standards).

The FLSA also prohibits an employer from discriminating against an employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). That provision has been interpreted to encompass employee complaints, either written or oral, submitted to the employer about perceived FLSA violations. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) ("To fall within the scope of the [FLSA] antiretaliation provision, a complaint must be *sufficiently clear and detailed* for a reasonable employer to understand it, in light of both *content and context*, as an *assertion of rights protected by the statute and a call for their protection*. This standard can be met, however, by oral complaints, as well as by written ones.") (alteration and emphasis supplied).

As with other federal employment statutes, courts apply a burden shifting framework to analyze FLSA claims. *See Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000). To establish a *prima facie* case under the FLSA anti-

retaliation provision, a plaintiff must show that: (1) he engaged in activity protected under the FLSA; (2) he subsequently suffered an adverse action by the employer; and (3) there was a causal connection between his protected activity and the adverse action. *See id.*

Plaintiff's case fails at the first step. The grievances that plaintiff filed on December 4 and December 19, 2023, do not reference the FLSA. More importantly, the grievances simply do not relate to perceived violations of the FLSA — *i.e.,* they do not concern minimum wage, overtime pay, recordkeeping, or child labor. In other words, the grievances were not sufficiently clear and detailed for a reasonable employer to understand, in light of both content and context, that each was an assertion of rights protected by the Fair Labor Standards Act and a call for their protection. *Kasten*, 563 U.S. at 14. Moreover, there is no evidence that plaintiff *ever* complained to UPS, either in writing or orally, about any matter within the ambit of the FLSA.

Plaintiff argues that "Whitlock's December 4 and December 19 grievances involved complaints about denied overtime and mistreatment surrounding job functions that directly impacted compensation."[24] Plaintiff's first point is not factually accurate. His December 19th grievance complained that he was passed over for the

---

[24] Doc. no. 36 (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment), at 3.

opportunity for *extra* work, not overtime hours, on December 16th. Plaintiff's assertion that the grievance was "tantamount to a complaint about being deprived of wages" falls flat, because he ultimately was compensated for 7.5 hours that he did not, in fact, work. The FLSA regulates proper compensation of employees for hours that they *actually* work and, therefore, plaintiff's grievance did not implicate its provisions.

Plaintiff's second contention — that his dispute with Sims about providing customers with boxes "directly impacted compensation" — compels a logical leap too far. Plaintiff does not explain the connection, if any there is, between Sims's directive and any matter regulated by the FLSA.

In short, plaintiff failed to demonstrate that he engaged in activity protected by the FLSA — a requisite element of his claim. Accordingly, his claim of retaliation based upon that statute cannot proceed.

## IV. CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment is due to be granted. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this 10th day of September, 2025.

_____
Senior United States District Judge